UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 22-137 (KMM/BRT) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| James Clayton Wolf, | |
| Defendant. | |

Quinn Askew, Esq., United States Attorney's Office, counsel for Plaintiff.

Paul C. Engh, Esq., Paul Engh Attorney At Law, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant's Motion for the Return of Seized Farm Equipment that was filed on July 21, 2022. (Doc. No. 8.) Per the parties' Stipulation, this Court adopted a briefing schedule. (Doc. No. 11.) The Government's response was filed on July 28, 2022. (Doc. No. 19.) With the Court's permission, Defendant filed a reply on August 3, 2022. (Doc. No. 24.) A hearing was held on August 5, 2022. (Doc. No. 23.) Following the hearing, supplemental briefing was permitted. The parties submitted their supplemental briefs on August 8, 2022. (Doc. Nos. 25, 26.)

Defendant James Clayton Wolf seeks the temporary return of a subset of farm equipment seized by the Government on the grounds that the Government's retention of

the farm equipment during the harvesting season creates a significant hardship and that a protective order would preserve the continued availability of the farm equipment at issue. The Government contends that there is no procedural vehicle available to Wolf to ask for the temporary return of certain equipment during the pretrial phase of this case due to any hardship.

## THE SEIZED FARM EQUIPMENT

On May 12, 2022, the Government secured seizure warrants representing that there was probable cause that Wolf had committed the criminal offense of wire fraud and that there was probable cause to believe that certain assets described within the warrants were traceable to the wire scheme. *See In re: Seizure Warrant*, No. 22-mj-372 (HB) (D. Minn. May 26, 2022) — *In re: Seizure Warrant*, No. 22-mj-392 (HB) (D. Minn. May 26, 2022).[1] Each of the seizure warrants included a statement that the assets listed could be "easily be sold, leased, moved, or otherwise made unavailable and that Wolf is the sole owner of these assets." *See, e.g.*, *In re: Seizure Warrant*, No. 22-mj-384 (HB), Doc. No. 2 at 29 (D. Minn. May 26, 2022). "Consequently, a restraining order pursuant to 21 U.S.C. § 853(e) would not be sufficient to ensure the availability of the property for forfeiture." *Id.* The seizure warrants relating to the property at issue were signed by Magistrate Judge Hildy Bowbeer on May 10, 2022. *See*, *e.g.*, *In re: Seizure Warrant*, No. 22-mj-392 (HB), Doc. No. 2 at 1 (D. Minn. May 26, 2022). The Government seized the property on May

---

[1] The warrants were combined criminal and seizure warrants.

12, 2022. *See*, *e.g.*, *In re: Seizure Warrant*, No. 22-mj-392 (HB), Doc. No. 3 at 2 (D. Minn. June 6, 2022).

On May 13, 2022, after Magistrate Judge Bowbeer signed the warrants and the property was seized, the Government agreed to temporarily return a tractor and a cultivator to Wolf "to prevent undue hardship with respect to the imminent planting of his crops." (Doc. No. 24 at 12.) The Government and Wolf agreed to the following terms:

> Pursuant to, and expressly conditioned on, the terms listed below the United States has agreed to temporarily return the following two items to Mr. Wolf in order to prevent undue hardship with respect to the imminent planting of his crops:
>
>> a. John Deere 9620RX Tractor, ID No. 1RW9620RCJP805434; and
>>
>> b. John Deere 2230FH Floating Hitch 5-Section Field Cultivator, 11-ft center frame, 60 ft, 6 in, ID No. 1N02230FCJ0775318.
>
> These two items will be temporarily returned subject to the following express conditions:
>
>> a. Mr. Wolf will provide proof of insurance for both items;
>>
>> b. Mr. Wolf will pay costs associated with transferring these items to and from his property;
>>
>> c. Mr. Wolf agrees that the United States may re-seize these items, without the need for an additional seizure warrant, upon completion of his spring planting, or 21 days after their return to him, whichever is first;
>>
>> b. Mr. Wolf agrees that the United States may enter onto his land and outbuildings to effect the re-seizure of the property as described above, and that he will cooperate with such re-seizure;
>>
>> c. Mr. Wolf agrees that the property shall be returned in substantially the same condition as it was when it was

3

    originally seized, and will notify the United States if there is any damage. If any such damage occurs, Mr. Wolf will make all necessary insurance claims and other filings and agrees that any resulting payments will be paid over to, or otherwise subject to seizure by, the United States;

   d. Mr. Wolf agrees that any failure to return the property described above to the United States will be deemed obstruction of justice, and he waives any objection to a resulting sentencing enhancement if the property is not returned as is described above.

(Doc. No. 24 at 12–13.) There is no dispute that Wolf complied with the terms of the agreement and the farm equipment was returned.

A few weeks after entering into the above agreement, a Grand Jury issued an Indictment dated July 7, 2022, that included Forfeiture Allegations. (Doc. No. 1.) Under those forfeiture allegations, the Government listed the following property as "forfeitable property":

   a. All funds and holdings, with a last known balance of $246,314.84, at Ameriprise Financial Services acct. [XXXXX];

   b. All funds and holdings, with a last known balance of $177,814.91, at Ameriprise Financial Services acct. [XXXXX];

   c. All funds and holdings, with a last known balance of $925,138.03, at Ameriprise Financial Services acct. [XXXXX];

   d. All funds and holdings up to $2,118,347.53 at Ameriprise Financial Services acct. [XXXXX];

   e. All funds and holdings up to $94,468.99 at Ameriprise Financial Services acct. [XXXXX];

f. All funds and holdings, with a last known balance of $1,904,177.21, at Northland Securities, Inc. acct. [XXXXX];

g. All funds and holdings, with a last known balance of $916,826.01, at Northland Securities, Inc. acct. [XXXXX];

h. Real property identified as 29 Township: 20N Range: 21 W T20N R21W SEC 29 LAREDO VILLAGE UNIT 1 TRACT 4047-A BLK 3 LOT 23 CONT, assessor's # 213-26-067, located at [XXXXX] Grandhill Road, Bullhead City, AZ;

i. Real property identified as the West One-half of the Northeast Quarter (W ½ NE ¾) of Section Fourteen (14), Township One Hundred Seven (107), Range Thirty-nine (39), Murray County, Minnesota, located at [XXXXX], Dovray, Minnesota (Parcel ID Nos. 06-014-0030 and 06-014-0020) (80 acres from Lindstrom);

j. Real property identified as the Southeast Quarter (SE ¼) of Section 2, Township 107 North, Range 36 West (Amboy Twp), Cottonwood County, Minnesota (Parcel ID No. 01-002-0400) (160 acres from Richardson);

k. Real property identified as Part of the Southwest Quarter of Section 4, Township 107 North, Range 34 West in Selma Township, Cottonwood County, Minnesota, described as follows: Beginning at an existing iron monument at the northwest corner of the Southwest Quarter of said Section 4; thence south 00 degrees 48 minutes 01 seconds west, bearing based on Cottonwood County Coordinate System, along the west line of said Southwest Quarter and along the centerline of the Township Road, as exists, a distance of 67.46 feet, to the point of beginning; thence south 61 degrees 07 minutes 45 seconds east a distance of 1785.86 feet; thence south 70 degrees 42 minutes 55 seconds east a distance of 278.64 feet; thence south 87 degrees 20 minutes 40 seconds east a distance of 265.84 feet; thence north 89 degrees 57 minutes 10 seconds east a distance of 556.11 feet, to the east line of said Southwest Quarter; thence north 00 degrees 33 minutes 36 seconds east, along said east line a distance of 1075.19 feet, to the northeast corner of said Southwest Quarter; thence south 89 degrees 06 minutes 18 seconds west, along the north fine of said Southwest Quarter, a distance of 2658.46 feet, to the point of beginning;

and

Part of the Southwest Quarter of the Southwest Quarter of Section 4, Township 107 North, Range 34 West in Selma Township, Cottonwood County, Minnesota, described as follows: Commencing at an existing Iron monument at the southwest corner of the Southwest Quarter of said Section 4; thence north 00 degrees 48 minutes 01 seconds east, bearing based on Cottonwood County Coordinate System, along the west line of said Southwest Quarter and along the centerline of the Township Road, as exists, a distance of 544.12 feet, to the point of beginning; thence continuing north 00 degrees 48 minutes 01 seconds east, along said west line and said centerline, a distance of 1948.17 feet; thence south 60 degrees 55 minutes 55 seconds east a distance of 1745.34 feet; thence south 67 degrees 52 minutes 28 seconds east a distance of 276.84 feet; thence south 87 degrees 20 minutes 01 seconds east a distance of 303.61 feet; thence south 88 degrees 47 minutes 03 seconds east a distance of 473.29 feet; thence south 01 degrees 35 minutes 42 seconds west a distance of 701.20 feet; thence south 00 degrees 24 minutes 20 seconds west a distance of 777.62 feet, to the south line of said Southwest Quarter; thence south 89 degrees 10 minutes 19 seconds west, along said south line a distance of 2043.47 feet; thence north 00 degrees 48 minutes 01 seconds east parallel with the west line of said Southwest Quarter, a distance of 521.83 feet; thence north 88 degrees 23 minutes 42 seconds west a distance of 524.84 feet, to the point of beginning;

(Parcel ID Nos. 14-004-0402 and 14-004-0403) (146 acres from Lingbeek);

l. Real property identified as the West Half of the Northwest Quarter (W ½ of NW ¼), Section Eleven (11), Township One Hunched Eight (108), Range Thirty-six (36), Cottonwood County, Minnesota (Parcel TD No. 07-011-0100) (80 acres from Davis);

m. John Deere 2230FH Floating Hitch 5-Section Field Cultivator, 11-ft center frame, 60 ft, 6 in., vehicle identification no. (VIN) 1N02230FCJ0775318;

n. John Deere 9620RX Tractor, VIN 1RW9620RCJP805434;

o. John Deere 760FD - HydraFlex 30 ft. Centered Flexible Draper Cutting Platform (Model Year 2019), VIN 1H0730FDCK0805072;

p. John Deere S770 Combine - HX (Model Year 2019), VIN 1H057705KK0805284;

q. John Deere 5125R Utility Tractor —FT4, VIN 1LV5725RAKK450355

r. John Deere XUV835R (Model Year 2019), VIN 1M0835RACKM021806;

s. John Deere 712FC 12-Row Folding Corn Head - 30 in., VIN XF712FCLLC810151;

t. 375 J&M Seedtender;

u. 60 Zoske's Rotary Hoe, Double Fold;

v. 2016 Freightliner Cascadia 125, VIN 3AKJGEDV1GSGS6944;

w. 2016 Freightliner Cascadia 125. VIN 3AKJGEDV3GSGS6;

x. 2021 GMO Sierra 1500, VIN 3GTU9FEL1MG131470;

y. 2020 GMC Yukon XL, VIN 1GKS2CKJ6LR110016;

z. 2014 Chevrolet Corvette Convertible, VIN 1GlYM3D73E5121169;

aa. 2016 Chevrolet Corvette Convertible, VIN lG1YU3D65G5605774;

bb. 2016 Chevrolet Silverado, VIN 3GCUKTEC6GG214996;

cc. 2016 Polaris Turbo Vel Blue RZR, VIN 3NSVDE92XGF455315;

dd. Great Plains CTA4500 Air Drill, Serial #: GP-O1008Y;

ee. Great Plains 2350 Air Cart, Serial#: GP-A1405T;

ff. 2016 Maurer Aluminum Grain Ca1-t, ID no. 57CKG4028GS000266;

gg. Model 1550 Tridem Grain Cart Serial#: 10709 0920;

hh. John Deere 8320R tractor, VIN 1RW8320RTEP092670; and

u. John Deere 8295R tractor, VIN 1RW8295RAJD131931.

(Doc. No. 1 at 5–8.)

Defendant Wolf now seeks the temporary return of a subset of the above items so that he may harvest the crops that were planted using (with the Government's approval) other seized equipment last spring. (Doc. No. 25 at 4.) As Wolf's counsel has stated, Wolf is simply trying to reap what the Government permitted him to sow via the temporary use of seized farm equipment.

## CRIMINAL FORFEITURE

In *Kaley v. United States*, the United States Supreme Court addressed the underpinnings of the law of criminal forfeiture:

> Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes. *See* 21 U.S.C. § 853(a). Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and "lessen the economic power" of criminal enterprises. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *see id.*, at 634, 109 S.Ct. 2646 ("Forfeiture provisions are powerful weapons in the war on crime"). The Government also uses forfeited property to recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training. *See id.*, at 629–630, 109 S.Ct. 2646. Accordingly, "there is a strong governmental interest in obtaining full recovery of all forfeitable assets."

571 U.S. 320, 324 (2014). In line with the governmental interest in obtaining full recovery, the Supreme Court noted that 21 U.S.C. § 853(e)(1) "furthered the policy considerations of the criminal forfeiture statute by providing for pretrial restraint of

8

forfeitable property to ensure their availability during the pendency of the criminal proceedings." *United States v. Swenson*, No. 1:13-CR-91 (BLW), 2014 WL 2506300, at *2 (D. Idaho July 1, 2014)[2] (citing *Kaley*, 571 U.S. at 323).[3]

But § 853 is not without its limits. Though the Government may restrain or seize forfeitable assets prior to conviction, it may only do so "if it appears that the defendant may otherwise transfer or conceal those assets by the time of conviction." *Id.* at *3 (citing 21 U.S.C. § 853(e), (f)). Thus, pretrial restraint depends upon both a showing of probable cause and that the restraint of the forfeitable property is necessary to ensure its availability.

---

[2]  In *Swenson*, the court denied the defendants' motion to "dissolve the seizure warrant," but gave them the opportunity to renew their motion by filing a motion to return property under Rule 41(g) of the Federal Rules of Criminal Procedure. *Swenson*, 2014 WL 2506300 at*1.

[3]  In *Kaley*, "two indicted defendants wishing to hire an attorney challenged a pretrial restraint on their property." *Kaley*, 571 U.S. at 322. "The question presented [wa]s whether criminal defendants are constitutionally entitled to a hearing to contest a grand jury's prior determination of probable cause to believe they committed the crimes charged." *Id.* The Supreme Court held that they had "no right to relitigate that finding." *Id.* Here, Wolf is not seeking to contest the Grand Jury's determination of probable cause to believe that he committed the crime charged. Therefore, *Kaley* does not bar Wolf's request for a hearing to seek the temporary use of seized farm equipment to harvest his crops.

## ANALYSIS

Wolf's motion does not challenge probable cause to support the validity of the warrants.[4] Nor does Wolf's motion attempt to revisit the Grand Jury's decision to issue the Indictment.[5] Instead, the narrow issue before the Court is whether Wolf can invoke Federal Rules of Criminal Procedure 41(g) or 21 U.S.C. § 853 to obtain the temporary return of seized farm equipment to harvest his crops.

The first question is whether Wolf has an available procedural mechanism by which to bring his motion. Wolf filed his motion pursuant to Rule 41(g). The Government claims Rule 41(g) is unavailable because the property seized is now included in the Forfeiture Allegations of the Indictment.[6] However, this Court need not

---

[4] Wolf has not, however, waived his right to file other non-dispositive and dispositive motions by the motion filing deadlines in this case.

[5] A motion to relitigate the grand jury's prior determination of probable case would be barred pursuant to *Kaley*. *See Kaley*, 571 U.S. at 324.

[6] Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." The Government argues that Rule 41(g) is unavailable to Wolf because the property at issue was seized pursuant to valid federal seizure warrants and the seized property is now included in the Forfeiture Allegations of the Indictment, making it "subject to forfeiture." (Doc. No. 19 at 4, 5.) In support of this position, the Government highlighted *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002) and *United States v. Jackson*, 526 F.3d 394, 396–97 (8th Cir. 2008). But in both cases, the respective motions regarding the seized property were filed *after* convictions, which made the property subject to forfeiture as defined by § 853(a). *See Vanhorn*, 296 F.3d at 715, 719; *Jackson*, 526 F.3d at 396–97; *see also United States v. Portis*, No. 11-CR-305(18) (DSD/LIB), 2014 WL 1400691, *1 (D. Minn. Apr. 10, 2014) (explaining that a Rule 41(g) motion is properly denied if the property has been "administratively or judicially forfeited"). This Court is

10

address the applicability of Rule 41(g) because this Court concludes that Wolf's motion can be construed as properly brought under 21 U.S.C. § 853. *See, e.g.*, *United States v. Lazzaro*, No. 21-CR-00173 (PJS/DTS), Doc. No. 188 at 3 (D. Minn. Apr. 22, 2022) ("Because this Court is aware of no binding precedent that requires a challenge to the government's pretrial restraint of property be brought as a Rule 41(g) motion, [the defendant's] motion is properly brought under § 853.").[7] "As evident by the Supreme Court's decision in *Kaley v. U.S.*, in which the defendants challenged the pretrial restraint of their property, [the defendant] need not wait until his criminal proceedings conclude to challenge the government's pretrial restraint of his property." *Id.* at 3; *see also United States v. Dupree*, 781 F. Supp. 2d 115, 130–31 (E.D.N.Y. Mar. 18, 2011).[8]

---

not convinced that under certain circumstances, Rule 41(g) should not apply; however, since Wolf's motion is properly brought pursuant to 21 U.S.C. § 853, this Court declines to further address Rule 41(g).

[7]  In *Lazarro*, Magistrate Judge David T. Schultz denied the defendant's request for the permanent return of his Ferrari. The defendant argued that the government had not established there was probable cause in the seizure warrant to believe the property was forfeitable. *See Lazzaro*, No. 21-CR-00173 (PJS/DTS), Doc. No. 188 at 8. But Judge Schultz declined to revisit the probable cause determination made by a prior magistrate judge who had issued the seizure warrant, noting that there was no additional evidence that called into question the initial probable cause determination. *Id.*

[8]  In *Dupree*, funds were seized pursuant to seizure warrants. *Dupree*, 781 F. Supp. 2d at 122–26. The defendant filed a motion seeking a return of funds partly on the grounds that the government had not sustained its burden to show that the procedures set forth in 21 U.S.C. § 853(f) "may not be sufficient to assure the availability of the property for forfeiture." *Id.* at 130–31. Notably, the government recognized that § 853(f) requires a showing that a less restrictive means of securing property is insufficient. The court held a hearing on Dupree's post-seizure, post-indictment motion, but found that the

Thus, this Court turns to the question of whether, pursuant to § 853, the Court can take action to address the hardship to Wolf by issuing an order for temporary use of the farm equipment. As discussed above, the Government may restrain or seize forfeitable assets prior to conviction only if it appears that the defendant may otherwise transfer or conceal those assets by the time of conviction. *See* 21 U.S.C. § 853(e), (f). Here, *after* the seizure warrants were signed by Magistrate Judge Bowbeer, the Government entered into a detailed agreement with Wolf that provided for the temporary return of farm equipment to Wolf so he could plant his crops in May 2022. Judge Bowbeer was not made aware of this option when the seizure warrants were presented for her signature.

The May 13, 2022 agreement for temporary use, which was satisfied by Wolf, demonstrates that a protective order (restraining order or injunction) pursuant to § 853 would assure the availability of the property for forfeiture. The equipment is not a boat or car (or even a small truck) that is inherently mobile or easily sold. *See*, *e.g.*, *United States v. Lewis*, No. 04-CR-403 (JNE/SRN), 2006 WL 1579855, at *5 (D. Minn. June 1, 2006). To the contrary, the Government concedes that the items sought are "[l]arge pieces of farm equipment [that] must be loaded onto specialized carriers." (Doc. No. 26 at 4.) While there is nothing in the text of the statute that authorizes reevaluation, there is also nothing that bars it under the unique circumstances of this case. Additionally, ignoring

---

seized funds at issue "could be, and had been, easily transferred in and out of the accounts." *Id.* at 133. As noted above, the farm equipment at issue in this case is large equipment that needs to be loaded onto specialized carriers for transport.

the fact of the Government's post-warrant agreement to permit temporary use of the equipment for planting the crops that Wolf now wishes to harvest would be contrary to the purpose and policy considerations addressed by the criminal forfeiture statute, which provides for pretrial restraint of forfeitable property *to ensure their availability during the pendency of the criminal proceedings. See Swenson*, 2014 WL 2506300, at *2. Therefore, this Court recommends that the District Court enter an order providing for the temporary return of items n, o, p, q, s, v, and ff, [9] with the imposition of reasonable conditions to ensure their availability for forfeiture.[10]

## RECOMMENDATION

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Wolf's Motion for the Return of Seized Farm Equipment (Doc. No. 8) be **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in part insofar as the United States must allow for the temporarily return of the following items that are the subject of Wolf's motion to Wolf to prevent undue hardship with respect to the imminent harvesting of the crops: n, o, p, q, s, v, and ff ("the Harvesting Farm

---

[9] The Court declines to recommend including item w, as this item was not included in the original motion to return. (At the hearing, the Court asked about narrowing and not expanding the list, and the Court will not expand the list now.)

[10] This Court's recommendation regarding the imminent—and urgent—need to harvest crops that were planted in May 2022 should not be interpreted to suggest that

Equipment") with the imposition of reasonable conditions. It is recommended that the motion be denied in part as to item w.

    2.    This Court further recommends that the District Court enter an order providing for the temporary return of items n, o, p, q, s, v, and ff, with the imposition of reasonable conditions that are set forth in the RECOMMENDED PROTECTIVE ORDER FOR TEMPORARY USE OF HARVESTING FARM EQUIPMENT below. This Court also recommends that the parties be permitted to seek the Court's modification of the terms and conditions of the order by stipulation or motion:

### RECOMMENDED PROTECTIVE ORDER FOR TEMPORARY USE OF HARVESTING FARM EQUIPMENT

The United States of America ("Government") must allow for the temporary return of the following items that are identified in the Indictment to Defendant James Clayton Wolf ("Wolf") in order to prevent undue hardship with respect to the imminent harvesting of the crops: n, o, p, q, s, v, and ff ("the Harvesting Farm Equipment") with the imposition of reasonable conditions set forth below:

    1.    Prior to the return of the equipment, Wolf (or his counsel as indicated) must do the following:

        a. Wolf's counsel must file a Statement reflecting the anticipated date for completion of the harvesting of Wolf's crops before any equipment is returned to Wolf. The parties, through their counsel, must meet and confer

---

future temporary use of the equipment for planting or harvesting in 2023 would be supported under Rule 41(g) or § 853.

      to agree on the anticipated date for the completion of the harvesting of Wolf's crops.

    b. Wolf must provide proof of insurance for all items prior to their return.

    c. Wolf must make arrangements that are satisfactory to the Government to pay the costs associated with transferring or transporting the Harvesting Farm Equipment to and from his property.

    d. Wolf must provide the Government with a list of the identities of any other person, who may be using the Harvesting Farm Equipment (for example, his nephew) and provide the Government with a list of any other persons who may be using any Harvesting Farm Equipment during the period of temporary use.

2. After receiving the farm equipment for temporary use:

    a. Wolf is prohibited from selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, or damaging the property.

    b. Wolf is prohibited from using or letting others use the Harvesting Farm Equipment for any use, other than to harvest crops planted on the real property he owns, rents or leases.

    c. Wolf is prohibited from renting, leasing, or loaning any of the Harvesting Farm Equipment to any others during the temporary use period.

    d. Wolf must pay for any maintenance of any Harvesting Farm Equipment needed during the temporary use period.

    e. The Government may re-seize Harvesting Farm Equipment, without the need for an additional seizure warrant, upon completion of Wolf's fall harvesting, or 21 days after the anticipated date for completion of the harvest as reflected in the Statement, whichever is earlier.

  f. The Government may enter onto Wolf's land and outbuildings to affect the re-seizure of the Harvesting Farm Equipment as described above, and Wolf must cooperate with such re-seizure.

  g. Wolf must return the Harvesting Farm Equipment in substantially the same condition as it was when it was originally seized and must notify the Government s if there is any damage. If any such damage occurs, Wolf must make all necessary insurance claims and other filings and any resulting payments to Wolf must be paid over to, or will be otherwise subject to seizure by, the Government.

  3. Upon return of the Harvesting Farm Equipment, the Government is permitted to inspect Wolf's property to determine all of the Harvesting Farm Equipment is present and accounted for.

Date: August 12, 2022        *s/ Becky R. Thorson*
                    BECKY R. THORSON
                    United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Because of the urgent nature of this matter, this Court will set an expedited objection period. A party may file and serve specific written objections to the proposed findings and recommendations within **3 business days** after being served a copy of the Report and Recommendation. After that, a party may respond to those objections after being served a copy of the objections within **2 business days**. Please note that these are expedited deadlines and differ from those provided in Local Rule 72.2. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

**If any party proposes other conditions to this Court's recommended order, those conditions must be presented in the form of an objection by the objection period. Any additional conditions proposed must be specific, and must include an explanation for why the condition is needed.**