UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,   No. 22-cr-137 (KMM/DTS)

    Plaintiffs,

v.   **ORDER**

James Clayton Wolf,

    Defendant.

This matter is before the Court on the August 12, 2022 Report and Recommendation ("R&R") of United States Magistrate Judge Becky R. Thorson. [R&R, ECF No. 27]. In the R&R Magistrate Judge Thorson recommended that this Court grant in part and deny in part James Clayton Wolf's motion for the return of seized farm equipment ("Harvesting Farm Equipment") and impose a protective order governing the temporary return of that property. [*Id.* at 13–16]. Mr. Clayton has filed a Limited Objection to the Report and Recommendation, arguing that Judge Thorson should have granted his request for return of a 2016 Freightliner Cascadia 125 semi-truck, but otherwise agreeing with the recommended disposition of his motion. [ECF No. 30]. The government also filed Objections to the Report and Recommendation, asking this Court to decline to follow the R&R and to deny Mr. Wolf's motion. [ECF No. 31]. For the reasons that follow, the R&R is adopted, Mr. Wolf's Limited Objection and the

1

government's Objections are overruled, and the Motion for Return of Property is granted in part and denied in part.

## I.     Legal Standard

The Court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). District court judges "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II.    The R&R

As explained in the R&R, in May 2022, the government obtained pre-indictment seizure warrants based on the government's representations that there was probable cause to believe Mr. Wolf had engaged in wire fraud and the assets to be seized were traceable to the scheme. After the warrants were issued, the government agreed to temporarily return some of the seized farming equipment to Mr. Wolf in consideration of the hardship caused if he could not use the equipment while planting crops. The government allowed him to use that equipment subject to terms designed to protect the property's value and ensure its return. Mr. Wolf complied with those terms and returned the property after using it to plant.

A grand jury issued an indictment concerning Mr. Wolf on July 7, 2022, which included forfeiture allegations for funds in multiple accounts, several parcels of real property, and a variety of farming tractors, semi-trucks, and other vehicles. Judge

Thorson observed that Mr. Wolf seeks a return of a subset of this equipment so that he can harvest the crops that the government allowed him to plant.

The R&R noted that Mr. Wolf challenges neither probable cause to support the validity of the warrants, nor the grand jury's decision to issue the indictment. Although Wolf filed his motion under Rule 41(g), the R&R then concluded that his motion could be construed as a request brought under 21 U.S.C. § 853. In support of this construction, Judge Thorson cited *United States v. Lazzaro*, No. 21-CR-00173 (PJS/DTS), Doc. No. 188 at 3 (D. Minn. Apr. 22, 2022), and the *Lazzaro* court's observation that under *Kaley v. United States*, 571 U.S. 320, 325–26 (2014), a defendant is not required to wait until the conclusion of criminal proceedings to challenge the restraint of his property. [ECF No. 27 at 10–11].

Next, the R&R found that § 853 permits the Court "to address the hardship to Wolf by issuing an order for temporary use of the farm equipment." [*Id.* at 12]. The R&R explained that the statute allows the government to restrain or seize forfeitable assets before a conviction is obtained only when a defendant might transfer or conceal the assets by the time of conviction. [*Id.* (citing 21 U.S.C. § 853(e), (f))]. Magistrate Judge Hildy Bowbeer (ret.) signed the seizure warrants without being informed of the possibility, later realized, that the parties could agree to the temporary return of the farm equipment for a limited use. And the R&R noted that Mr. Wolf's compliance with that agreement shows that a protective order can assure the availability of the property

3

for forfeiture. [*Id.* (citing *United States v. Lewis*, No. 04-CR-403 (JNE/SRN), 2006 WL 1579855, at *5 (D. Minn. June 1, 2006), and distinguishing the farm equipment from a boat, car, or small truck that could be easily sold)]. The R&R observed that § 853 does not explicitly authorize reevaluation of a seizure, but similarly includes "nothing that bars it under the unique circumstances of this case." [*Id.*] Finally, the R&R concluded that ignoring the government's agreement to allow Mr. Wolf to use the farming equipment to plant the crops he now wants to harvest would run contrary to the purposes of the criminal forfeiture statute, including permitting pretrial seizure to ensure that it is available for forfeiture if a conviction is obtained. [*Id.* at 13 (citing *United States v. Swenson*, 1:13-CR-91 (BLW), 2014 WL 2506300, at *2 (D. Idaho July 1, 2014))].

Based on this discussion, the R&R recommended that a subset of the property seized by the government be temporarily returned to Mr. Wolf so that he may harvest the crops the government allowed him to plant earlier this year. The R&R declined to recommend that the 2016 Freightliner Cascadia 125 semi-truck be returned because it was not included in Mr. Wolf's original motion, and Judge Thorson asked the parties to narrow the list of equipment rather than expand it. With respect to the property to be temporarily returned, the R&R recommended that reasonable conditions be placed upon the return and use of the property pursuant to a protective order, and that the parties be permitted to seek modification of the protective order's terms by stipulation or motion.

4

### III.     The Government's Objections

The government objects to the R&R on several grounds. The Court finds that none of the government's Objections demonstrate that the R&R was issued in error. First, the Court is not persuaded that Judge Thorson erred in determining that Mr. Wolf's motion should be analyzed under 21 U.S.C. § 853 instead of Rule 41(g). The government has had ample opportunity to address the applicability of the statute through post-hearing briefing and in its Objections to the R&R.[1] [ECF Nos. 26, 31]. Judge Thorson's request for the parties to brief the statutory issues did not result in issuing an "advisory opinion," as the government suggests. This objection is overruled.

Second, the government next objects that the R&R created a broad hardship exception for criminal forfeiture cases. [ECF No. 31 at 3–4]. However, the government can point to no express prohibition on the consideration of the hardship created by a seizure under the unique circumstances of this case, and the Court finds no error in the R&R's determination that those circumstances favor permitting Mr. Wolf the temporary use of the farm equipment, subject to reasonable conditions. As the R&R observes, [ECF

---

[1] For this same reason, the Court finds unpersuasive the government's assertion that the R&R misapplied *United States v. Lazzaro*, No. 21-CR-173 (PJS/DTS), Doc. No. 188 (D. Minn. Apr. 22, 2022), in raising the issue of § 853's applicability at the hearing. [ECF No. 31 at 7–9]. Nothing in *Lazzaro*, nor any other case cited by the government, stands for the proposition that it is error for a magistrate judge to analyze a request under a framework the court deems more appropriate under the circumstances than that originally relied on, after giving the parties the chance to brief the application of the alternative analysis.

No. 27 at 9 n.3], Mr. Wolf is not attempting to relitigate a grand jury's probable cause determination, distinguishing this case from *Kaley v. United States*, 571 U.S. 320, 324 (2014). The government's objection is overruled.

Third, the Court is also not persuaded by the government's suggestion that the facts of this case would not justify a return of property under the three-part test of 18 U.S.C. § 983(f), and in fact, application of the considerations in that statute supports Judge Thorson's conclusions. The government does not suggest that Mr. Wolf has insufficient ties to the community—indeed, he farms land in Minnesota. *Id.* § 983(f)(1)(B). The evidence also amply supports Judge Thorson's findings that depriving him use of the farm equipment for purposes of harvesting and transporting crops is a serious hardship, *id.* § 983 (f)(1)(C), and that the hardship outweighs the risk that the property will be unavailable, *id.* § 983 (f)(1)(D). Indeed, Judge Thorson found that failing to allow the use of the farm equipment would be to waste the very crops Mr. Wolf was permitted to plant by the government's prior agreement.[2] And given that Mr. Wolf abided by the conditions of the earlier agreement and returned that equipment to the government, the suggestion that there is a serious risk the seized equipment will not later be available for forfeiture if Mr. Wolf is convicted rings hollow.

---

[2] Facilitating the harvest of crops that Mr. Wolf planted (again, using some of the equipment the government seized, yet allowed him to operate) is eminently pragmatic considering the global food crisis. https://www.brookings.edu/blog/future-development/2022/06/14/the-war-in-ukraine-triggered-a-global-food-shortage/.

And contrary to the government's suggestion that "the magistrate court specifically declined to follow case law finding property like vehicles and boats to be inherently mobile and easily moved, hidden, and sold," [ECF No. 31 at 5], Judge Thorson specifically (and reasonably) distinguished the large farm equipment at issue here from more inherently mobile items. In addition, the fact that one of the pieces of equipment is a semi-truck does not undermine her findings—there simply is no basis in the record to conclude that such a large piece of equipment, even though it may be driven under its own power, is likely to be sold or hidden.

Fourth, this Court is not persuaded by the government's suggestion that the R&R misapplies several cases in reaching the conclusion that Mr. Wolf should be permitted the temporary use of the farm equipment. Contrary to the government's position, the Court concludes that the R&R properly and reasonably distinguished the unique circumstances of this case from those involved in *Kaley*, *United States v. Dupree*, 781 F. Supp. 2d 115 (E.D.N.Y. Mar. 18, 2011), *Jackson v. United States*, 526 F.3d 394 (8th Cir. 2008), and *United States v. Vanhorn*, 296 F.3d 713 (8th Cir. 2002). As noted, the R&R explains that this case is different from *Kaley* because Mr. Wolf is not relitigating the grand jury's probable cause determination. The Court agrees with the R&R's assessment that this case involves large equipment that is fundamentally different in character from the seized funds at issue in *Dupree*. [ECF No. 27 at 11–12 & n.8]. And the R&R correctly and importantly observes that *Jackson* and *Vanhorn* were cases where a

conviction had already been obtained, whereas Mr. Wolf's pre-trial presumption of innocence remains. [*Id.* at 10 n.6]. The Court finds the government's arguments unpersuasive, and they are, accordingly, overruled.

Fifth, the government asserts that the R&R errs in re-evaluating the determination in the seizure warrants that a restraining order may not be sufficient to protect the government's interests in forfeiture. This objection is overruled. Judge Thorson correctly found that the government did not apprise the issuing judge that one option available was for Mr. Wolf to be permitted some use of the equipment for the purpose of farming and subject to reasonable limitations. The seizure warrants at issue were, of course, issued *ex parte*, and no one suggested alternatives to the issuing judge to complete seizure. The government's objections sidestep this reality, and the Court is not persuaded that the R&R's approach was unwarranted or prohibited by law under the unique circumstances of this case.

The government also asserts that Mr. Wolf was farming "at his own risk" when he was permitted to use some of the seized equipment to plant his crops because the government did not agree to return all of his equipment as he requested. [ECF No. 31 at 10–11]. The government also states that "as a practical matter, the magistrate court's conclusion has the effect of disincentivizing—and in fact penalizing—the United States for compromising with opposing parties where possible and may have a chilling effect on future negotiations." [*Id.* at 11 n.5]. The government's implication that it is willing to

8

compromise where possible ignores the reality that it could, in fact, have done so here and let Mr. Wolf use the very property at issue. The government's own conduct in this case could just as easily lead a person engaged in future negotiations with its agents to question what the point of planting the crops would be in the first place if the government were to maintain its opposition to use of the equipment for harvesting.

The government's position appears to be that although it allowed Mr. Wolf to use some equipment to plant his crops, he should have assumed that he would have to arrange alternative means for those crops to be harvested, and it was improper for the R&R to conclude that the government should, instead, grant him temporary use of the equipment at issue for that purpose. The government implies that Mr. Wolf has ample resources he could liquidate to rent other equipment, [*see* ECF No. 31 at 19 (referring to farmland valued at around $7 million)], but this suggestion is unrealistic. It strains credulity to suggest Mr. Wolf could sell or mortgage farmland in time to use the proceeds to lease other equipment to harvest these crops.[3]

Finally, in its objections, the government requests that if the R&R is upheld and the proposed protective order entered, this Court modify the conditions imposed on the

---

[3] The Court further agrees with Judge Thorson's observation in the R&R that the circumstances justifying Mr. Wolf's temporary use of the seized property does not suggest that future temporary use of the equipment for planting or harvesting in 2023 would be supported. [ECF No. 31 at 13–14 n.10]. Indeed, Mr. Wolf should now be on notice that such temporary future return of property will not occur, and he should make other arrangements, if he intends to farm in 2023.

return of the property in three ways. First, the government asks that the proposed requirement that Mr. Wolf provide insurance for all the items prior to their return be modified to read that "Wolf must provide proof of insurance *in his name* for all items prior to their return." The Court finds this modification unnecessary to achieve the policy of ensuring that the property or its value remain available for potential forfeiture. Second, the government requests an additional condition that Mr. Wolf be required to submit proof of crop insurance in his name for the land he is farming. For the same reasons, the Court finds this proposal unnecessary. Indeed, it is unclear how this request has any bearing on the government's valid interest in receiving the returned equipment. Third, the government asks the Court to add a condition that Wolf be required to submit title for each piece of property to hold as collateral during his temporary use. The Court finds this to be a reasonable condition and will include it in the Protective Order imposed as a result of the Court's adoption of the R&R in this Order.

The Court has considered and rejected the government's remaining points of contention with the R&R's conclusions and proposed disposition of Mr. Wolf's motion for return of property.

## IV.   Defendant's Limited Objection

In his Limited Objection, Mr. Wolf suggests that the R&R erred in declining to recommend that the 2016 Freightliner Cascadia 125 be returned along with the other

items requested. He argues that he originally submitted a broader request for return of property and then complied with Judge Thorson's invitation to narrow the scope of the equipment to be returned. Mr. Wolf states that the R&R permits the return of another semi-truck, but "[h]e needs two trucks and two trailers to haul his extensive harvest." [ECF No. 30 at 2]. The Court finds no error in the R&R's conclusion that this second truck should not be included in the list of property to be returned to Mr. Wolf for its temporary use.

**V.     Order**

For the reasons discussed above, the Court enters the following ORDER:

1.     The Report and Recommendation [ECF No. 27] is ADOPTED;

2.     The Defendant's Limited Objection to the Report and Recommendation [ECF No. 30] is OVERRULED;

3.     The Government's Objections to the Report and Recommendation [ECF No. 31] are OVERRULED;

4.     The Defendant's Motion for the Return of Seized Farm Equipment [ECF No. 8] is GRANTED IN PART and DENIED IN PART.

   a.     The motion is granted in part insofar as the United States must allow for the temporary return of the following items that are the subject of Wolf's motion to Wolf to prevent undue hardship with respect to the imminent

harvesting of the crops: n, o, p, q, s, v, and ff ("the Harvesting Farm Equipment") with the imposition of reasonable conditions.

      b.     The motion is denied in part as to item w.

      c.     The return of items n, o, p, q, s, v, and ff shall be subject to and the parties shall abide by the terms of the following PROTECTIVE ORDER FOR TEMPORARY USE OF HARVESTING FARM EQUIPMENT.

### PROTECTIVE ORDER FOR TEMPORARY USE OF HARVESTING FARM EQUIPMENT

The United States of America ("Government") must allow for the temporary return of the following items that are identified in the Indictment to Defendant James Clayton Wolf ("Wolf") in order to prevent undue hardship with respect to the imminent harvesting of the crops: n, o, p, q, s, v, and ff ("the Harvesting Farm Equipment") with the imposition of reasonable conditions set forth below. The parties shall be permitted to seek the Court's modification of the terms and conditions of this Protective Order by stipulation or motion.

    1.     Prior to the return of the equipment, Wolf (or his counsel as indicated) must do the following:

      a.  Wolf's counsel must file a Statement reflecting the anticipated date for completion of the harvesting of Wolf's crops before any equipment is returned to Wolf. The parties, through their counsel, must meet and confer to agree on the anticipated date for the completion of the harvesting of Wolf's crops.

   b. Wolf must provide proof of insurance for all items prior to their return.

   c. Wolf must make arrangements that are satisfactory to the Government to pay the costs associated with transferring or transporting the Harvesting Farm Equipment to and from his property.

   d. Wolf must provide the Government with a list of the identifies of any other person who may be using the Harvesting Farm Equipment (for example, his nephew) and provide the Government with a list of any other persons who may be using any Harvesting Farm Equipment during the period of temporary use.

2. After receiving the farm equipment for temporary use:

   a. Wolf is prohibited from selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, or damaging the property.

   b. Wolf is prohibited from using or letting others use the Harvesting Farm Equipment for any use, other than to harvest crops planted on the real property he owns, rents or leases.

   c. Wolf is prohibited from renting, leasing, or loaning any of the Harvesting Farm Equipment to any others during the temporary use period.

   d. Wolf must pay for any maintenance of any Harvesting Farm Equipment needed during the temporary use period.

   e. The Government may re-seize the Harvesting Farm Equipment, without the need for an additional seizure warrant, upon completion of Wolf's fall harvesting, or 21 days after the anticipated date for completion of the harvest as reflected in the Statement, whichever is earlier.

   f. The Government may enter onto Wolf's land and outbuildings to affect the re-seizure of the Harvesting Farm Equipment as described above, and Wolf must cooperate with such re-seizure.

   g. Wolf must return the Harvesting Farm Equipment in substantially the same condition as it was when it was originally seized and must notify the government if there is any damage. If any such damage occurs, Wolf

   must make all necessary insurance claims and other filing and any resulting payments to Wolf must be paid over to, or will be otherwise subject to seizure by, the Government.

  h. Wolf must submit to the United States title of each item of Harvesting Farm Equipment to hold as collateral during its continued use.

 3. Upon return of the Harvesting Farm Equipment, the Government is permitted to inspect Wolf's property to determine whether all of the Harvesting Farm Equipment is present and accounted for.

Date: August 22, 2022

             *s/Katherine Menendez*
             Katherine Menendez
             United States District Judge