UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 22-137 (KMM/DTS) |
| Plaintiff, | **SUPERSEDING INDICTMENT** |
| v. | 18 U.S.C. § 371 |
| (1) JAMES CLAYTON WOLF, and <br> (2) ADAM CLIFFORD OLSON, | 18 U.S.C. § 1343 |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

## Background

1. At all times material to this indictment:

   a. JAMES CLAYTON WOLF was a Minnesota resident. WOLF was certified as an organic farmer between not later than October 2014 and until at least June 2020.

   b. ADAM CLIFFORD OLSON was a Minnesota resident. OLSON was certified as an organic farmer between not later than 2014 and until at least July 2021.

   c. Crops farmed in the United States can be grown, harvested, and marketed in varying ways. When farmers utilize genetically modified seeds or fertilizer to speed up plant growth or to increase yield, such crops are described as "GMO" for "genetically modified organism." A combination of regulations and industry standards affects the use and labeling of GMO crops.

   d. Many crops are grown for human or animal consumption without genetically modified inputs but with the use of chemicals such as fertilizers, insecticides and preservatives; these crops are identified as "non-GMO" and comprise most of the grains used in food and animal feed.



CASE 0:22-cr-00137-KMM-DTS   Doc. 74   Filed 01/11/23   Page 2 of 10

U.S. v. James Clayton Wolf et al.                                      Crim. No. 22-137 (KMM/DTS)

e. Organic crops are grown without the use of either GMOs or chemicals, following strict protocols relating to the planting, fertilizing, harvesting, storage, and transportation of the crops and the labeling of the consumer foods in which the grains are used. Because they are required for the production of organic foods and organic foods are more expensive in the consumer market, organic grains can be sold for a higher price than GMO or non-GMO grains.

f. The National Organics Program (NOP) is the regulatory system implemented by the United States Department of Agriculture to ensure the integrity of the organic commodities market in order to protect consumers and bona fide organic farmers. The NOP utilizes a certification system for farmers who wish to market organic farm products.

## The Scheme to Defraud

2. Between not later than 2014 and lasting until at least 2021, WOLF engaged in a scheme and artifice to defraud grain purchasers by selling them non-GMO grains falsely represented as being organic.

3. It was part of the scheme to defraud that WOLF repeatedly purchased non-organic corn and soybeans from a grain seller and resold the grain as organic product. In addition to falsely describing the grain as organic, WOLF concealed from the buyers that he did not hold a grain buyer license as required by law.

4. It was further part of the scheme that WOLF grew crops without adhering to organic farming standards, including for example using chemical fertilizers and pesticides, and sold the conventionally farmed crops as organic product.

U.S. v. James Clayton Wolf et al.                                                   Crim. No. 22-137 (KMM/DTS)

5. It was further part of the scheme to defraud that WOLF provided buyers copies of his certifications under the National Organics Program.

6. The fact that the grain was not organic was material to the buyers, who would not have bought grains that were not organically farmed.

7. It was further part of the scheme to defraud that WOLF directed that some of the payments for the grain he sold be made to a third party, who spent the money for WOLF's benefit.

8. It was further part of the scheme to defraud that after WOLF's organic farming certification was revoked in 2020, WOLF and OLSON cooperated to sell non-GMO crops falsely described as organic.

9. WOLF and others assisting WOLF communicated with the grain supplier and with the buyers by means of interstate wire communication, including by telephone and e-mail. WOLF and his associates sent buyers documentation falsely describing the grain as organically grown.

10. As a result of the fraudulent scheme, WOLF and OLSON received more than $46,000,000 in payments from grain buyers.

## COUNTS 1-3
### (Wire Fraud)

11. The grand jury realleges paragraphs 1 through 10.

12. On or about the dates below, in the State and District of Minnesota and elsewhere, the defendants,

U.S. v. James Clayton Wolf et al.                                    Crim. No. 22-137 (KMM/DTS)

## JAMES CLAYTON WOLF and
## ADAM CLIFFORD OLSON,

aiding and abetting each other and aided and abetted by others known to the grand jury, having devised and intending to devise a scheme and artifice to defraud grain purchasers and to obtain money from the same by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme and artifice, and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures and sounds:

| COUNT | ON OR ABOUT | WIRE COMMUNICATION |
|---|---|---|
| 1 | 11/13/2018 | E-mail from wolfjim2000@gmail.com sent from Minnesota to Pennsylvania attaching invoice for "organic corn" |
| 2 | 03/06/2020 | E-mail from wolfjim2000@gmail.com sent from Minnesota to Pennsylvania attaching organic certification for 2019 growing season |
| 3 | 10/22/2020 | E-mail from adam@olsonseed.com sent from Minnesota to Pennsylvania describing amount due for purportedly organic grain |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 4
(Conspiracy)

13.     Paragraphs 1 through 10 are incorporated by reference as if fully set forth herein.

4

U.S. v. James Clayton Wolf et al.　　　　　　　　　　　　　　　Crim. No. 22-137 (KMM/DTS)

14.　From in or about sometime in 2014 to approximately July 2021, in the State and District of Minnesota and elsewhere, the defendants,

**JAMES CLAYTON WOLF and
ADAM CLIFFORD OLSON,**

did knowingly and willfully conspire with each other to commit an offense against the United States, that is, wire fraud as set forth in this Superseding Indictment.

15.　The purpose of the conspiracy was to defraud purchasers of grains by falsely describing the grains as organic, misrepresenting compliance with organic certification standards, and share in the proceeds of the fraud.

### Manner and Means of the Conspiracy

16.　The manner and means of the conspiracy included the conduct described in paragraphs 1 through 10, which are incorporated by reference as if fully set forth herein.

### Overt Acts

17.　In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the State and District of Minnesota and elsewhere:

　　(1)　On or about November 13, 2018, WOLF caused an email to be sent from Minnesota to Pennsylvania attaching invoice for "organic corn";

U.S. v. James Clayton Wolf et al.                                            Crim. No. 22-137 (KMM/DTS)

(2) On or about March 6, 2020, WOLF caused an email to be sent from Minnesota to Pennsylvania attaching organic certification for 2019 growing season; and

(3) On or about October 22, 2020, OLSON caused an email to be sent from Minnesota to Pennsylvania describing amount due for purportedly organic grain.

All in violation of Title 18, United States Code, Sections 371 and 1343.

## FORFEITURE ALLEGATIONS

As the result of conviction of the offenses alleged in Counts 1-4 of this Indictment, the defendants,

**JAMES CLAYTON WOLF and
ADAM CLIFFORD OLSON,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes, or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 371 and 1343, including but not limited to:

a. All funds and holdings, with a last known balance of $246,314.84, at Ameriprise Financial Services acct. 185941812133;

b. All funds and holdings, with a last known balance of $177,814.91, at Ameriprise Financial Services acct. 205922610133;

c. All funds and holdings, with a last known balance of $925,138.03, at Ameriprise Financial Services acct. 363059080133;

U.S. v. James Clayton Wolf et al.                                          Crim. No. 22-137 (KMM/DTS)

- d. All funds and holdings up to $2,118,347.53 at Ameriprise Financial Services acct. 319197158133;

- e. All funds and holdings up to $94,468.99 at Ameriprise Financial Services acct. 762095073133;

- f. All funds and holdings, with a last known balance of $1,904,177.21, at Northland Securities, Inc. acct. 76T-257021;

- g. All funds and holdings, with a last known balance of $916,826.01, at Northland Securities, Inc. acct. 76T-262781;

- h. Real property identified as 29 Township: 20N Range: 21W T20N R21W SEC 29 LAREDO VILLAGE UNIT 1 TRACT 4047-A BLK 3 LOT 23 CONT, assessor's # 213-26-067, located at 2873 Grandhill Road, Bullhead City, AZ;

- i. Real property identified as the West One-half of the Northeast Quarter (W ½ NE ¼) of Section Fourteen (14), Township One Hundred Seven (107), Range Thirty-nine (39), Murray County, Minnesota, located at 161st St, Dovray, Minnesota (Parcel ID Nos. 06-014-0030 and 06-014-0020) (80 acres from Lindstrom);

- j. Real property identified as the Southeast Quarter (SE ¼) of Section 2, Township 107 North, Range 36 West (Amboy Twp), Cottonwood County, Minnesota (Parcel ID No. 01-002-0400) (160 acres from Richardson);

- k. Real property identified as Part of the Southwest Quarter of Section 4, Township 107 North, Range 34 West in Selma Township, Cottonwood County, Minnesota, described as follows: Beginning at an existing iron monument at the northwest corner of the Southwest Quarter of said Section 4; thence south 00 degrees 48 minutes 01 seconds west, bearing based on Cottonwood County Coordinate System, along the west line of said Southwest Quarter and along the centerline of the Township Road, as exists, a distance of 67.46 feet, to the point of beginning; thence south 61 degrees 07 minutes 45 seconds east a distance of 1785.86 feet; thence south 70 degrees 42 minutes 55 seconds east a distance of 278.64 feet; thence south 87 degrees 20 minutes 40 seconds east a

CASE 0:22-cr-00137-KMM-DTS   Doc. 74   Filed 01/11/23   Page 8 of 10

U.S. v. James Clayton Wolf et al.                                    Crim. No. 22-137 (KMM/DTS)

distance of 265.84 feet; thence north 89 degrees 57 minutes 10 seconds east a distance of 556.11 feet, to the east line of said Southwest Quarter; thence north 00 degrees 33 minutes 36 seconds east, along said east line a distance of 1075.19 feet, to the northeast corner of said Southwest Quarter; thence south 89 degrees 06 minutes 18 seconds west, along the north fine of said Southwest Quarter, a distance of 2658.46 feet, to the point of beginning;

and

Part of the Southwest Quarter of the Southwest Quarter of Section 4, Township 107 North, Range 34 West in Selma Township, Cottonwood County, Minnesota, described as follows: Commencing at an existing Iron monument at the southwest corner of the Southwest Quarter of said Section 4; thence north 00 degrees 48 minutes 01 seconds east, bearing based on Cottonwood County Coordinate System, along the west line of said Southwest Quarter and along the centerline of the Township Road, as exists, a distance of 544.12 feet, to the point of beginning; thence continuing north 00 degrees 48 minutes 01 seconds east, along said west line and said centerline, a distance of 1948.17 feet; thence south 60 degrees 55 minutes 55 seconds east a distance of 1745.34 feet; thence south 67 degrees 52 minutes 28 seconds east a distance of 276.84 feet; thence south 87 degrees 20 minutes 01 seconds east a distance of 303.61 feet; thence south 88 degrees 47 minutes 03 seconds east a distance of 473.29 feet; thence south 01 degrees 35 minutes 42 seconds west a distance of 701.20 feet; thence south 00 degrees 24 minutes 20 seconds west a distance of 777.62 feet, to the south line of said Southwest Quarter; thence south 89 degrees 10 minutes 19 seconds west, along said south line a distance of 2043.47 feet; thence north 00 degrees 48 minutes 01 seconds east, parallel with the west line of said Southwest Quarter, a distance of 521.83 feet; thence north 88 degrees 23 minutes 42 seconds west a distance of 524.84 feet, to the point of beginning;

(Parcel ID Nos. 14-004-0402 and 14-004-0403) (146 acres from Lingbeek);

U.S. v. James Clayton Wolf et al.                                                    Crim. No. 22-137 (KMM/DTS)

l.  Real property identified as the West Half of the Northwest Quarter (W ½ of NW ¼), Section Eleven (11), Township One Hundred Eight (108), Range Thirty-six (36), Cottonwood County, Minnesota (Parcel ID No. 07-011-0100) (80 acres from Davis);

m.  John Deere 2230FH Floating Hitch 5-Section Field Cultivator, 11-ft center frame, 60 ft, 6 in., vehicle identification no. (VIN) 1N02230FCJ0775318;

n.  John Deere 9620RX Tractor, VIN 1RW9620RCJP805434;

o.  John Deere 760FD – HydraFlex 30 ft. Centered Flexible Draper Cutting Platform (Model Year 2019), VIN 1H0730FDCK0805072;

p.  John Deere S770 Combine – HX (Model Year 2019), VIN 1H057705KK0805284;

q.  John Deere 5125R Utility Tractor – FT4, VIN 1LV5725RAKK450355;

r.  John Deere XUV835R (Model Year 2019), VIN 1M0835RACKM021806;

s.  John Deere 712FC 12-Row Folding Corn Head – 30 in., VIN XF712FCLLC810151;

t.  375 J&M Seedtender;

u.  60' Zoske's Rotary Hoe, Double Fold;

v.  2016 Freightliner Cascadia 125, VIN 3AKJGEDV1GSGS6944;

w.  2016 Freightliner Cascadia 125, VIN 3AKJGEDV3GSGS6;

x.  2021 GMC Sierra 1500, VIN 3GTU9FEL1MG131470;

y.  2020 GMC Yukon XL, VIN 1GKS2CKJ6LR110016;

z.  2014 Chevrolet Corvette Convertible, VIN 1G1YM3D73E5121169;

9

U.S. v. James Clayton Wolf et al.                      Crim. No. 22-137 (KMM/DTS)

aa. 2016 Chevrolet Corvette Convertible, VIN 1G1YU3D65G5605774;

bb. 2016 Chevrolet Silverado, VIN 3GCUKTEC6GG214996;

cc. 2016 Polaris Turbo Vel Blue RZR, VIN 3NSVDE92XGF455315;

dd. Great Plains CTA4500 Air Drill, Serial #: GP-C1008Y;

ee. Great Plains 2350 Air Cart, Serial #: GP-A1405T;

ff. 2016 Maurer Aluminum Grain Cart, ID no. 57CKG4028GS000266;

gg. Model 1550 Tridem Grain Cart Serial #: 10709 0920;

hh. John Deere 8320R tractor, VIN 1RW8320RTEP092670; and

ii. John Deere 8295R tractor, VIN 1RW8295RAJD131931.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 371, 981(a)(1)(C), 982(a)(1), and 1343 and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____      _____

UNITED STATES ATTORNEY          FOREPERSON